**Clovis Carl GREEN, Jr., Petitioner,**

v.

**Donald W. WYRICK, Warden, Missouri State Penitentiary, Respondent.**

No. 76 CV 147–C.

United States District Court,
W. D. Missouri, C. D.

Nov. 1, 1976.

Clovis Carl Green, Jr., pro se.

William F. Arnet, Philip M. Koppe, Asst. Attys. Gen., State of Missouri, Jefferson City, Mo., for respondent.

ORDER WITHDRAWING LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING CAUSE WITHOUT PREJUDICE

ELMO B. HUNTER, District Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, has filed *pro se*

a petition for writ of habeas corpus on the official court forms provided for that purpose, challenging his confinement in the Administrative Segregation Unit of the penitentiary, seeking restoration of merit time, and alleging threats, beatings, and reprisals against him by the warden and guards of the Missouri State Penitentiary. Additionally, the petition includes a prayer for damages in the amount of $100,000.[1]

Petitioner has submitted this cause without prepayment of the $5.00 fees and costs or giving of security therefor. Accompanying the petition is a Forma Pauperis Affidavit, signed by petitioner and verified under oath before a notary public on July 23, 1976, which attests that because of his poverty petitioner is unable to pay the costs or give security. By Order entered August 6, 1976, petitioner was granted leave to proceed in *forma pauperis* with this cause, and the respondent was ordered to show cause why the relief sought in this petition for writ of habeas corpus should not be granted.

Respondent filed his response to the Court's Order on August 25, 1976, asserting therein that petitioner should not be permitted to proceed with this action until he has shown cause why he should not be enjoined from filing this petition. In addition, respondent contends that habeas corpus relief is inappropriate in this case because the claims raised by petitioner are frivolous and fail to state any basis for relief pursuant to 28 U.S.C. § 2241.

On September 7, 1976, petitioner submitted a letter to the Court, asking that it be considered his traverse to the respondent's response. On September 10, 1976, petitioner submitted a formal, typewritten "Traverse and Motion for Evidentiary Hearing" which addressed the issue of enjoining petitioner from filing this action as well as the other issues raised in the response. However, because petitioner's traverse contained vile, scandalous, and irrelevant material, the Court ordered on September 15, 1976, that the "Traverse and Motion for Evidentiary Hearing" be stricken from the record in this proceeding.

A full evidentiary hearing to consider the issues raised by petitioner in the above-styled cause was set to commence Tuesday, October 19, 1976. On October 15, 1976, respondent filed a Motion for Permanent Injunction pursuant to 28 U.S.C. § 1651, seeking to perpetually restrain and enjoin petitioner from filing or instituting in this or any other court, on his own behalf or on behalf of any other inmate of the Missouri penal system, any action against the State of Missouri or any of its officials or employees, including the state judiciary, for any alleged cause of action arising out of his criminal conviction or his resultant confinement incident thereto, and further to restrain and enjoin petitioner from assisting, aiding or representing any inmates of the Missouri penal system in the preparation of any legal documents whatsoever. Because respondent's Motion for Permanent Injunction raised an issue separable from those raised in the petition for writ of habeas corpus, and because each was a matter of substantial complexity and great importance, warranting clear presentation and careful consideration, the Court on its own motion ordered a separate trial on the issues raised in respondent's Motion for Permanent Injunction, to commence on Monday, October 18, 1976, separately from the hearing of the merits of other issues in this

---

1. Petitioner originally filed this action in the form of a hand-written *pro se* petition, which was filed provisionally on July 15, 1976. Unaware that petitioner also was voluntarily submitting his petition on court-approved forms, the Court entered its order directing petitioner to file his petition on the forms enclosed for that purpose. The first form petition, filed July 26, 1976, contains a prayer for damages in the amount of $100,000 for "violation of his constitutional rights, mental and emotional anguish and suffering." On August 3, 1976, in response to the Court's order, petitioner filed a second petition on court-approved forms. The August 3, 1976, petition, which raises substantially the same claims as the earlier form, does not contain a prayer for money damages. The Court is uncertain which of these forms petitioner intends to be controlling in this case. However, because petitioner has not indicated his desire to abandon his damage claim, the Court concludes that petitioner desires to pursue that claim in this action.

case, previously set to commence on October 19, 1976.

At the October 18, 1976, evidentiary hearing on respondent's Motion for Permanent Injunction, evidence was adduced which renders unnecessary further consideration of the merits of this petition for writ of habeas corpus. In view of the evidence presented at the hearing, most of which was unrefuted by petitioner and much of which was admitted by him, it is clear that petitioner obtained leave to proceed in *forma pauperis* with this action by knowingly submitting false information to this Court. Under these circumstances, petitioner's leave to proceed in *forma pauperis* will be withdrawn and this petition for writ of federal habeas corpus dismissed on the ground that petitioner is not a "pauper" within the meaning of 28 U.S.C. § 1915, and that in representing himself to be a pauper, petitioner intentionally engaged in a fraud upon this Court.

Under the provisions of 28 U.S.C. § 1915, the Court is authorized to allow commencement of a civil action without prepayment of fees and costs where the potential petitioner is an indigent who has filed an affidavit that he is unable to pay such costs or give security therefor. However, under the provisions of § 1915(d), the Court may dismiss the case if satisfied that the action is frivolous or malicious, or if the allegation of poverty is untrue.

At the evidentiary hearing on respondent's Motion for Permanent Injunction, Respondent's Exhibit 1, introduced and received in evidence, was a copy of petitioner's "inmate account" at the Missouri State Penitentiary. This document, identified and interpreted by Mr. Norman E. Seyfert, Treasurer of the penitentiary in charge of all inmate accounts, contains entries tracing all cash and money order deposits and withdrawals as they enter or leave the inmate's account. This exhibit reveals that petitioner had $30.92 in his inmate account on June 25, 1976, prior to the original affidavit of poverty executed in this case. On July 15, 1976, the date of filing of this action, petitioner's account contained $20.13.

In addition, Mr. Seyfert's testimony revealed that since January 1, 1976, petitioner has received a total of $303.75 in income from outside sources or sale of law books, and that during the same period, he has earned $97.50 as income from various job assignments within the penitentiary. Petitioner's own testimony disclosed that he receives frequent gifts of money from his mother and other "pen pals" and that he receives a fairly regular income from the sale of law books which he obtains free of charge from lawyers and interested persons outside the penitentiary. The Affidavit in Support of Leave to Proceed in Forma Pauperis which petitioner executed on June 15, 1976, in another action, No. 76 CV 120–C, indicated his receipt of approximately $80.00 in "gifts." Additionally, substantial testimony was introduced to indicate that petitioner is in the habit of charging other inmates cash or such "barter" items as postage stamps or cigarettes in return for his legal services. With the exception of two entries in the amount of $25.00 each, paid for legal services to inmate Darrell Randall, these charges are not documented in petitioner's inmate account; the evidence is sufficient, however, to indicate that petitioner's "income" from his legal "business" is not to be ignored. The Court further takes judicial notice of its own docket in recalling petitioner's previous representations, by means of a sworn affidavit filed in the case of *Green v. Wyrick*, Civil Action No. 75 CV 165–C, that he possesses a substantial sum of money in a Swiss bank account.

Petitioner's inmate account further shows a total expenditure of $81.75 in the inmate canteen during the month of June 1976. While the canteen stocks such items as stamps, paper, envelopes, and pens, which may have been purchased with a portion of this total amount, an entry on June 16, 1976, reveals the purchase of a "coupon book" which may be redeemed on weekends only for such items as soda, pastry, potato chips, popcorn, and movies. Moreover, petitioner testified that during June 1976, he spent approximately $50.00 in order to pur-

chase a typewriter from another inmate. During the month of July 1976, petitioner spent $47.58 in the inmate canteen.

Thus the evidence leaves no doubt that, during the period relevant to the filing of this action and execution of its accompanying affidavit of poverty, petitioner possessed and expended funds substantially in excess of the $5.00 filing fee applicable in this case. Petitioner contends, however, that all the sums of money which he has received from sources outside the penitentiary, even including the frequent gifts of money from his mother, are not his personal funds because they were provided to him as a minister of the Human Awareness Universal Life Church and intended for church purposes rather than personal use. Accordingly, because he did not consider such "church funds" his own, petitioner states that he felt it unnecessary to reveal to the Court the existence of those sums in his inmate account when executing the affidavit of poverty required in order to obtain leave to proceed in *forma pauperis.*

With respect to this contention, the Court finds petitioner not a credible witness; in short, it appears from the facts that petitioner's interpretation of in *forma pauperis* status constitutes not an innocent misunderstanding, but a deliberate, intentional, self-serving and erroneous re-definition in order to mislead the Court in obtaining leave to proceed without prepayment of fees and costs. For example, the Court notes with interest that on one occasion, in executing the affidavit in support of leave to proceed in *forma pauperis* in *Green v. Wyrick,* Civil Action No. 76 CV 120–C, petitioner did differentiate the receipt of a specific amount of money as having been solely for church purposes. In addition, the Court notes petitioner's testimony on cross-examination that he spent "church money" on occasion for expenses of lawsuits he filed for other inmates in the Missouri State Penitentiary, and that he justified those expenditures because many inmates are members of the Human Awareness Universal Life Church and because one of the tenets of the church involves benefitting the oppressed. Petitioner further testified that each of the highly numerous lawsuits he has filed has been intended to benefit one or more inmates of the penitentiary, and thereby to benefit the Human Awareness Universal Life Church. Curiously, petitioner did not explain why, as a self-described minister of that self-created church, the expenses of petitioner's own lawsuits do not also constitute an expenditure for church purposes. Further, although petitioner contends that he segregated his earnings from his prison jobs and spent only those earned funds for such personal items as Hostess "Twinkies," petitioner's inmate account indicates expenditures well in excess of that amount for items which certainly may be characterized as personal. For instance, since January 13, 1976, petitioner has spent $45.00 for weekend "coupon books" alone. Even assuming the truth of petitioner's contention that he spent only earned jailhouse income for personal matters, petitioner has failed to make any showing whatsoever, although given ample opportunity to do so, that his necessary purchases have legitimately decreased his ability to pay the filing fee. Finally, despite evidence of petitioner's regular income during 1976, and although petitioner has filed 27 actions in the Western District of Missouri since January 1, 1976, petitioner testified that he never has paid a filing fee in this District in 1976, and that he always has sought in *forma pauperis* status.

■ To proceed in *forma pauperis* is a privilege and not a right. *Smart v. Heinze,* 347 F.2d 114, 116 (9th Cir. 1965); *Clough v. Hunter,* 191 F.2d 516 (10th Cir. 1951); *Ward v. Werner,* 61 F.R.D. 639 (M.D.Pa. 1974); see *Brewster v. North Am. Van Lines, Inc.,* 461 F.2d 649 (7th Cir. 1972); *Yates v. Wellman,* 373 F.Supp. 437 (E.D.Ky. 1974). On the basis of the foregoing record, leave to proceed in *forma pauperis* with this action should be withdrawn. Although he decided to deceive this Court as to his true financial status, petitioner clearly should have been able to pay the filing fee of $5.00 required to institute this action. "[A] plaintiff, even though of small means, could reasonably be asked to some small degree to

732

'put his money where his mouth is,' it being all too easy to file suits, even with sufficient pro forma allegations, if it costs nothing whatever to do so." *In re Stump,* 449 F.2d 1297, 1298 (1st Cir. 1971).

For the foregoing reasons, therefore, it is hereby

ORDERED that leave to proceed in *forma pauperis* with the above-styled petition for writ of habeas corpus be, and it is hereby, withdrawn. It is further

ORDERED that the petition herein be, and it is hereby, dismissed without prejudice.